## THOMAS FITZGERROLD, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

*Homicide—Indictment—Statute of 1862—Murder—First and Second Degrees.*

To charge in an indictment for murder that the prisoner committed the act "with malice aforethought," is equivalent to the averment that the act was committed "with a premeditated design to effect the death," &c.

Murder in the second degree, under the Statute of 1862 (ch. 197, p. 369), consists in killing a human being by a person engaged in the commission of a felony, where such killing does not, according to the statute, constitute murder in the first degree, or manslaughter, or excusable homicide.

Held, also, that the entire effect of the amendment of 1862 (ch. 197) was this: When the killing was perpetrated without any design to effect death, by a person engaged in the commission of a felony other than that of arson in the first degree, it was murder in the second degree.

The Plaintiff in Error was tried in the county of Westchester, for the murder of one Ellen Hicks. The jury found a general verdict of guilty. The Court sentenced the prisoner to be hung, and a judgment to that effect was entered in the minutes of the Court. The prisoner obtained the allowance of a writ of error, and a stay of proceedings. The General Term of the Second District affirmed the judgment, and the prisoner now brings his appeal to this Court. The indictment was in the following words, omitting the caption and scilicet:

"The jurors of the people of the State of New York, in and for the body of the county of Westchester, upon their oath and affirmation, do present: That Thomas Fitzgerrold, Michael J. Canty, John Doran, Michael Martin, John C. Burke, and Charles Burke, late of the town of Westchester, in the county of Westchester aforesaid, on the second day of August, in the year of our Lord one thousand eight hundred and sixty-six, with force and arms, at the town of Westchester aforesaid, in the county aforesaid, in and upon one Ellen Hicks, in the peace of God and of the said people then and there being, feloniously, wilfully, and of malice

18

aforethought, did make an assault; and that the said Thomas Fitz-gerrold, a certain gun (called a musket), of the value of ten dol-lars, then and there charged with gunpowder and a leaden bullet, which gun he, the said Thomas Fitzgerrold, in both his hands then and there had and held, at and against the said Ellen Hicks, then and there feloniously, wilfully, and of his malice afore-thought, did shoot off and discharge; and that the said Thomas Fitzgerrold, with the leaden bullet aforesaid, by means of shoot-ing off and discharging the said gun, so loaded, to and against the said Ellen Hicks, aforesaid, did then and there feloniously, wilfully, and of his malice aforethought, strike, penetrate, and wound the said Ellen Hicks in and upon the body of the said Ellen Hicks, near the navel, giving to her, the said Ellen Hicks, then and there, with the leaden bullet aforesaid, by means of shooting off and discharging the said gun so loaded to and against the said Ellen Hicks, and by such striking, penetrating and wounding the said Ellen Hicks as aforesaid, one mortal wound in and through the body of her, the said Ellen Hicks; of which said mortal wound the said Ellen Hicks did then and there soon after die.

"And the jurors aforesaid, on their oath and affirmation afore-said, do further present: That the said Michael J. Canty, John Doran, Michael Martin, John C. Burke, and Charles Burke, then and there, feloniously, wilfully, and of malice aforethought, were pres-ent, aiding, helping, abetting, comforting, assisting, and maintain-ing the said Thomas Fitzgerrold in the felony and murder afore-said, in manner and form aforesaid to do and commit.

"And the jurors aforesaid, upon their oath and affirmation afore-said, do say that the said Thomas Fitzgerrold, her, the said Ellen Hicks, in the manner and by the means aforesaid, feloniously and of his malice aforethought, did kill and murder; and that the said Michael J. Canty, John Doran, Michael Martin, John C. Burke, and Charles Burke, then and there, feloniously, wilfully, and of malice aforethought, were present, aiding, helping, abetting, com-forting, assisting, and maintaining the said Thomas Fitzgerrold in the felony and murder aforesaid, contrary to the form of the stat-

ute in such case made and provided, and against the peace of the people of the State of New York and their dignity."

*Francis Larkin* for the Plaintiff in Error.

*John S. Bates* for the Defendants in Error.

Hunt, Ch.J.—The prisoner alleges that the indictment charges only the offence of murder in the second degree. It does not allege that the killing was from a premeditated design to effect the death of any human being, nor that it was perpetrated by an act imminently dangerous to others, evincing a depraved mind, regardless of human life, nor that it was perpetrated in committing the crime of arson in the first degree. The killing is charged to have been by " wilfully, maliciously, and of malice aforethought " shooting the said Ellen Hicks upon her body, and inflicting upon her a wound from which she speedily died. This, the prisoner insists, is a charge of murder in the second degree only, and that the sentence and judgment, rendered upon a general verdict of guilty, are erroneous.

The killing of any human being, without the authority of law, is declared by the Revised Statutes (omitting the distinctions in reference to manslaughter and excusable or justifiable homicide) to be " murder " in the following cases :

1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being ;

2. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual ;

3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony (2 R. S. 657, § 5).

The case of The People v. Enoch arose soon after the passage of these statutes (13 Wend. 159). Enoch was indicted for murder, upon a charge that on, &c., he did with force and arms, " feloniously, wilfully, and of his malice aforethought," shoot and kill his wife, Nancy Enoch. He was convicted and sentenced to be hung. Upon a writ of error brought, it was insisted by his coun-

sel that the verdict and sentence could not be upheld, because a common law indictment "with malice aforethought" could be sustained by proof of killing, without a design to effect death, if such death happened in the perpetration of a crime or misdemeanor not amounting to felony; whereas, by the Revised Statutes, such an offence did not amount to murder (2 R. S. 657, § 5). The judgment was affirmed by the late Supreme Court, and upon appeal to the Court of Errors, was affirmed by that Court also. The Supreme Court say that the first subdivision was intended to define murder in the case of express malice, and the second and third subdivisions in cases of implied malice. Judge Nelson (p. 164) uses this language: "Malice aforethought, in common parlance, and as originally used, conveyed only the idea of express malice. Its meaning had been enlarged, so as to include implied malice, by judicial construction; to define and limit which was the object, and has been the only effect of the fifth section, above referred to. It was said on the argument that, under this indictment, the jury might have convicted the prisoner upon proof of implied malice, which, since the Revised Statutes, would only amount to manslaughter, but which evidence would sustain the terms of the indictment, 'malice aforethought,' and justify a conviction of murder from implied malice at common law. So it might have been said before those statutes, on a conviction of murder upon a similar indictment, that the jury might have convicted the prisoner upon proof which did not amount to murder, but only to manslaughter, as evidence of the latter offence was admissible under it. * * The answer to all this is, that it is the business and duty of the Court to see that a proper direction be given to the jury in point of law upon the evidence, and if either Court or jury err, the appropriate remedy must be sought." He proceeds: "The statute has not altered the common law. The offence of murder, as defined in the Revised Statutes, was so before the statute, and is but the adoption or introduction into the act of the common law description of the crime. The sixteenth section limits the offence to the cases mentioned in the fifth section, above cited; or, in other words, abolishes the offence at com-

mon law, except in those cases, and they are left as before existing in our criminal code. The cases of murder from implied malice have been limited by the second and third subdivisions of the fifth section; but those there defined existed before. The crime of murder might have been committed before the Revised Statutes, from implied malice, where the prisoner, while engaged in an unlawful act, under the degree of felony, such as a riot or other misdemeanor, killed another against his intention. By the third subdivision, such unlawful act must now be of the degree of felony. This is the only modification of the law of murder. The rule that the indictment should bring the offence within the words of the statute declaring it, is applicable only in its strict terms to cases where the offence is created by statute, or where the punishment has been increased, and the pleader seeks to bring the prisoner within the enhanced punishment."

In the Court of Errors (at p. 173, et seq.) the Chancellor reiterates these views at length, and concludes by saying : " From this examination of the subject I have arrived at the conclusion that a common law indictment for murder is proper, under the provisions of the Revised Statutes ; and a Defendant cannot be convicted on such an indictment of a felonious homicide with malice aforethought, unless the evidence is such as to bring the case within the statutory definition of murder " (p. 176). In The People *v.* White (24 Wend. 520) the late Court of Errors held, that when an indictment charged the killing to be feloniously, wilfully, of malice aforethought, and from a premeditated design to effect death, the premeditated design or express malice must be proved, but affirm and approve the case of Enoch. In The People *v.* Clark, decided in this Court in 1852 (3 Seld. 385, 393), Johnson, J., uses this language : " The words premeditated, aforethought, and prepense, possess, etymologically, the same meaning ; they are, in truth, the Latin and Saxon synonyms, expressing a single idea, and possess in law precisely the same force. The statute, so far as this term is concerned, has not altered the law. Malice prepense, however, had attained a broader meaning than belongs to the term premeditated design. The intent to take life was not necessary to

constitute malice prepense. Even express malice, or malice in fact, is defined to be a deliberate intention of doing *any* bodily harm to another, unauthorized by law (Hale's P. C. 451), and by no means necessarily involved an intent to take life. * * The degree of deliberation is not different from that required by the common law. * * It is enough that the intention precedes the act, although that follows instantly."

In 1862 (Laws 1862, ch. 197, p. 369) the law on the subject of murder was re-enacted, and was altered in its third subdivision. By the Revised Statutes, as already quoted, it was provided that the killing should be murder in the cases specified, of which the last was as follows : " 3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony." By the statute as altered it was made to read as follows : " 3. When perpetrated in committing the crime of arson in the first degree. Such killing, unless it be murder in the first degree, or manslaughter, or excusable or justifiable homicide, as hereinafter provided, or when perpetrated without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the second degree." By this amendment, a killing when perpetrated in committing the crime of arson in the first degree, still constituted the offence of murder in the first degree. When, however, the killing was perpetrated without any design to effect death, by a person engaged in the commission of a felony, other than that of arson in the first degree, it was murder in the second degree only. This was the entire effect of the amendment of 1862. This section is obscure, and has been generally read as if the words " or when perpetrated without any design to effect death, by a person engaged in the commission of any felony," formed an exception, like the words " or manslaughter," or "justifiable homicide." Upon this construction no crime of murder in the second degree is created. The very crime intended to be thereby created, is by this construction declared not to be such crime. A more reasonable construction should be put upon the language, and effect given to the evident intention of the Legislature. The statute may be thus paraphrased : The killing of a

human being shall be murder in the first degree—First, when perpetrated from a premeditated design to effect the death of the person killed, or of any human being. Second, when perpetrated by an act imminently dangerous, &c. Third, when perpetrated in committing the crime of arson in the first degree. Such killing, unless it be murder, or manslaughter, or excusable or justifiable homicide, as hereinafter provided, shall be murder in the second degree, when perpetrated without a design to effect death, by a person engaged in the commission of any felony. This was the evident intent of the framers of the statute, and, in my judgment, is a justifiable construction of the language. Or again, it may be read thus : Such killing, when perpetrated without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the second degree, unless it be murder in the first degree (as above defined), or manslaughter, or justifiable or excusable homicide, as hereinafter provided.

The punishment of murder in the second degree is fixed, by section seven, as an imprisonment in a State prison for a period of not less than ten years.

The construction which I have given to this statute is confirmed by the subsequent provisions of the statute, on the subject of manslaughter. This offence in the first, second, and third degrees, is defined by the statutes, and the punishment is fixed at confinement in the State prison, for periods ranging from two to seven years. The nineteenth section of the statute provides that every other killing of a human being shall be deemed to be manslaughter in the fourth degree. The punishment of this offence is by imprisonment in a State prison for two years, or by imprisonment in a county jail not exceeding one year, or by fine not exceeding $1,000, or by both such fine and imprisonment.

It has been suggested that the killing of a human being, when perpetrated without a design to effect death, by a person engaged in the commission of a felony, might be punished within the terms of section nineteen, and that constitutes the offence of manslaughter in the fourth degree. This would be quite unwarrantable, when we consider the very slight degree of punishment in-

flicted by that section, compared with the magnitude of the offence, and the greater punishment inflicted for the commission of much lighter crimes, as defined by the three preceding degrees of manslaughter. I feel therefore quite justified in making the assertion, that unless the crime of murder in the second degree consists in what I have defined it to be, it is entirely unprovided for in the statute. This is an absurdity not to be tolerated.

The prisoner's argument, in legal effect, is this : that he is charged by the indictment with an offence which may be found by the jury to be either murder in the first degree, or murder in the second degree ; that the jury have found a general verdict only against him ; that this may have been founded upon facts which would justify a conviction of the minor offence only, and that therefore a judgment based upon a verdict as for the greater offence is erroneous. This argument I do not consider sound. In the People *v*.Enoch (supra), it was charged that the Defendant killed his wife feloniously, and of malice aforethought, the words, " with premeditated design," being omitted. The law had then been so altered by the Revised Statutes, that a killing which occurred in commission of a misdemeanor simply, was not murder. It would be manslaughter merely. Malice aforethought embraced a class of offences which did not then constitute the crime of murder. The prisoner then stood indicted for an offence which might be murder, or might be an inferior offence, and yet upon a general verdict of guilty, and a judgment inflicting the punishment of death, the Court of Errors sustained the judgment. The Chancellor gave the answer which I have already cited, " that it is the duty of the Court to see that a proper direction be given to the jury in point of law upon the evidence, and if either Court or jury err, the appropriate remedy must be sought." No objection is taken to the charge of the Judge in the present case, and we are to assume that the Judge explained to the jury the law of murder in its different degrees, and the law of manslaughter, as defined by the statute, and that the jury rendered an intelligent verdict upon such understanding of the statutes. If this case had contained the charge of the Judge, in which it had been stated that to con-

stitute murder in the first degree it must appear to them that the killing was from a premeditated design to effect the death of a human being, or that it was perpetrated by an act imminently dangerous to others, evincing a depraved mind, regardless of human life, or when committing the crime of arson in the first degree, and that if perpetrated when engaged in the commission of any other felony, it would be murder in the second degree only, the charge would have been correct, and a general verdict would have justified the sentence given. We are to presume that the law was thus explained to the jury, and that they fully appreciated the effect of their verdict. The absence of an objection admits it.

It has always been held to be the law, that upon an indictment charging the offence of murder, and nothing else, the prisoner might be convicted of manslaughter. The same allegations in the indictment would maintain a conviction for murder, or would justify a verdict of manslaughter merely. The result depends upon the proof, the direction of the Judge, and the opinion of the jury. As these elements require a conviction of the greater or minor offence, such will be the result. As the same elements require a conviction of murder in the first degree, or of murder in the second degree, such will be the result.

The case of Enoch has stood as the law on this subject for more than thirty years. To overrule it would be a rash overthrow of a settled authority, under which many persons have suffered the extreme penalty of the law. The objection on which the prisoner's argument is based, is purely technical; it is not even suggested that the law was not accurately explained to the jury, or that his rights were not properly guarded.

The judgment should be affirmed.


WOODRUFF, J.—The Plaintiff in Error was indicted, tried, found guilty, and sentenced to death, at the Court of Oyer and Terminer, for the county of Westchester. By writ of error the judgment was brought under review at the General Term of the Supreme Court for the Second District, and was there affirmed; and the Court thereupon appointed a day for the execution of the sentence.

282    FITZGERROLD *v.* THE PEOPLE.    [JAN.

Opinion by WOODRUFF, J.

A writ of error was thereupon sued out by Plaintiff in Error, and the proceedings were thereby removed to this Court, and a stay of execution until the further order of this Court was obtained.

The indictment charged that the Plaintiff in Error, feloniously, wilfully, and of malice aforethought, made an assault upon one Ellen Hicks, with a gun, charged with gunpowder and bullet, which he held in his hands, and at and against the said Ellen Hicks, did feloniously, wilfully, and of his malice aforethought, shoot off and discharge, and with such bullet, by means of the shooting off and discharging the said gun, the said Fitzgerrold did, then and there, feloniously, wilfully, and of his malice aforethought, strike, penetrate, and wound the said Ellen Hicks, giving to her  *  *  one mortal wound,  *  *  of which said mortal wound, the said Ellen Hicks did, then and there, soon after die. *  *  *  And the jurors aforesaid,  *  *  say, that the said Fitzgerrold, her the said Ellen Hicks, in the manner and by the means aforesaid, feloniously and of his malice aforethought, did kill and murder.  *  *  *

It is insisted, on behalf of the Plaintiff in Error, that the offence of murder in the first degree is not charged in the indictment, and that therefore a verdict of guilty does not warrant a judgment condemning the Plaintiff for that offence.

In 1834, the Court of Errors of this State, in The People *v.* Enoch (13 Wend. 159), by an unanimous opinion, affirmed the judgment of the Supreme Court, which held that an indictment charging the act to have been committed feloniously, wilfully, and of malice-aforethought, was a sufficient charge of murder in the first degree, although the Revised Statutes then defined murder as a killing in the following cases :

1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being.

2. When perpetrated by an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

3. When perpetrated without any design to effect death, by a

person engaged in the commission of any felony (2 R. S. 657, Part 4, ch. 1, § 5).

The present statute (Laws of 1862, p. 369, ch. 197) defines murder in the first degree in the same terms, except that the third subdivision reads, " when perpetrated in committing the crime of arson in the first degree."

Under the indictment above mentioned Enoch was convicted of murder, sentenced to be hung, and the conviction and judgment thereon were sustained.

The ground was distinctly taken, and ably and elaborately argued, that the charging the act to have been with malice aforethought, was not a sufficient description of a killing with a premeditated design, and that therefore the conviction should not be sustained. And the precise argument now urged upon us was there earnestly pressed, viz.: that " had the accused, on his arraignment, pleaded guilty to the charge, the Court would not have known what judgment to pronounce "—*i. e.*, whether the punishment of murder in the first degree, death ; or of manslaughter, imprisonment in the State prison.

The Court were of the opinion and held, that the statute had not changed the form of pleading or the requisites of an indictment. That the words, " with malice aforethought," include express malice, which is all that is expressed or intended to be expressed by " premeditated design," and are legal and appropriate language to express it. The opinion of the Chancellor in the Court of Appeals was, that murder being a common law offence, and the law having adopted certain technical expressions to define the offence, the crime must be described in the indictment, or the intention be expressed in those technical terms, and no other. And that therefore in an indictment for murder, the terms murder, of his malice aforethought, are considered absolutely necessary, and without them it would be deemed a case of manslaughter.

This case clearly and necessarily sustains the indictment now in question. It holds that the statute has introduced no new rule of pleading to describe a killing with premeditated design ; that the Court, on the trial, must instruct the jury as to what

should be proved to sustain such an indictment, and in the giving of such instructions the statute is a guide, and any error in such instructions is to be corrected on exception thereto.

The decision in The People *v.* Enoch was affirmed by the Supreme Court in The People *v.* White (22 Wend. 167). There the pleader, in order to avoid question, had added to the charge of killing " with malice aforethought," the words of the statute— " and from a premeditated design to effect his death," &c. The Supreme Court held that these latter words were unnecessary and mere surplusage. That the other words, being in the form of a common law indictment, let in proof of any species of murder as defined by the section of the statute. Hence, that the words " with premeditated design," &c., might be rejected or disregarded.

The Court of Errors (24 Wend. 520) held that the pleader, by introducing the words " with premeditated design," &c., had adopted them as descriptive of the specific act charged, viz. : the description in the first subdivision of that section of the statute which defines murder, and as matter of description he had made them material. But the opinion of the Court showed that the words were not necessary to the validity of the indictment, and so far from retracting or reversing the decision of the same Court in The People *v.* Enoch, language of direct affirmance is used in the opinion. Thus (p. 580) : " Since the decision in the case of Enoch by this Court, no doubt can be entertained that a common law indictment, charging the offence to have been committed of *malice aforethought*, would be good for either of the offences described in the first or second subdivision of the section. Had the indictment been so drawn, and without the words ' with premeditated design,' &c., no doubt could be entertained that the charge of the Court to the jury would have been correct, and the conviction good." (P. 571) : " It is true that, according to the reason of the thing, as well as the decision of this Court in The People *v.* Enoch, a general count charging murder *with malice aforethought*, would be sufficient, and would be sustained by evidence of any sort of murder whatsoever within the statutory definitions."

These decisions involve no discussion of the extent to which the manner of the killing must be described, in order to avoid a variance and let in proof of the actual facts. Such a description will, in general, show to which subdivision of the statute the charge refers. But that it is necessary to use the words " with premeditated design," &c., in order to constitute a valid indictment, and that such design is sufficiently alleged in the charge, " with malice aforethought," is the clear doctrine of these cases.

In The People *v.* Clark, in this Court (7 N. Y. 385), no question arose on the form of the indictment. The inquiry was, what degree of deliberation was essential to constitute premeditated design; but in the discussion, Mr. Justice Johnson says that the words " premeditated, aforethought, and prepense, possess, etymologically, the same meaning, and are  *  *  synonyms, expressing a single idea, and possess in law precisely the same force." But as "malice prepense" had obtained a broader meaning than belongs to "premeditated design," the statute required, in order to a conviction of murder under the first subdivision, the existence of an actual intention to kill. The existence of such intention must therefore be proved on the trial, to sustain such an indictment under the first subdivision.

· The result of these cases most clearly is, that the crime of murder is sufficiently charged, when alleged, as in the present indictment, " with malice aforethought." But, in order to prove the crime, the proofs must establish a case within the requirement of the statute in one of its three subdivisions. And the party indicted is entitled to proper instructions to the jury as to what facts must be found to sustain the indictment. And a verdict of guilty, as charged in the indictment, is a finding of guilty of murder in the first degree; and judgment thereon, and condemnation to the punishment awarded to that crime, necessarily follow.

I find no reason for departing from these views of the law. If I doubted their accuracy, I should hesitate in disturbing cases which have been the guide of public affairs and the test of Court pleadings for more than thirty years, unless I saw that some wrong was done or some evil was created by continuing a form

of indictment so long approved, the meaning, force, and effect of which was well understood, so that no party indicted could possibly be surprised or placed at disadvantage on the trial, if the law was rightly declared to the jury; and if in that respect there was error, that may be corrected.

I have, however, no doubt on that subject. I think the decision in The People *v.* Enoch founded in good sense and correct in law, and that it is decisive in the case before us.

In a case in which the questions raised involve the life of a human being, I was disposed to consider carefully what could be urged by the counsel for the Plaintiff in Error, although the case did not seem doubtful; but the result of such consideration is, that the judgment must be affirmed.

MASON, J.—The prisoner was indicted for the crime of murder, at the Court of Oyer and Terminer in the county of Westchester. The indictment is in the old common law form, and is precisely like the form in the case of The People *v.* Enoch (13 W. R. 159). It charges that the said Thomas Fitzgerrold, feloniously, wilfully, and of his malice aforethought, did kill and murder Ellen Hicks, by shooting her through the body with a leaden bullet, discharged from a musket in the hands of the said Thomas Fitzgerrold, &c.

The prisoner was tried upon said indictment, at the Westchester Oyer and Terminer, in 1867; and the jury returned a general verdict of guilty, and the Court sentenced the prisoner to be hanged; and thereupon the prisoner procured a writ of error, and removed the case to the Supreme Court, where the judgment was affirmed; and the prisoner then removed the case into this Court, by writ of error, and now claims and insists that the judgment should be reversed, for the reason that the verdict of the jury upon the indictment did not find the prisoner guilty of murder in the first degree; or at least the Court were not justified in sentencing the prisoner to the punishment of death upon the verdict; and the question raised brings under review both the indictment and the verdict of the jury thereon. The rule in

criminal trials is, that the fact of guilt being ascertained and declared *by the jury*, the Court determines the punishment which the law prescribes for the offence (Duffy *v.* The People, 26 N. Y. R. 592, and the cases there cited).

There is no doubt in my mind but this indictment, upon well-settled principles of law, charges upon the Defendant the crime of murder in the *first degree*, and the jury having found a general verdict of guilty, it became the duty of the Court of Oyer and Terminer to pronounce the judgment which they did.

The fact of guilt being ascertained and declared by the jury, the Court must determine the punishment which the law prescribes for the offence. The point made by the Defendant against the conviction and judgment in this case is, that the verdict of the jury does not find the Defendant guilty of murder in the first degree, because they have only found him guilty of the offence charged in the indictment; and that because the indictment does not charge that the killing was perpetrated from a premeditated design to effect the death of the person killed, the offence of murder in the first degree is not found by the verdict. There are several answers to this objection. In the first place, it is a settled rule of the common law that the killing of a human being is unlawful, and primâ facie murder (Foster's Crown Law, 253). The killing is presumed in law to be felonious and malicious until the contrary is shown in evidence, and the burden is upon the Defendant to prove it (4 Black. Com. 201; 3 Chitty's Cr. Law, 730; Barbour's Cr. Treatise, 25); and consequently the general rule of pleading at common law is, that in the crime of murder it is not necessary to aver, "in hæc verba," the particular intent. It is also a rule of pleading in criminal cases, that presumptions of law need never be averred (4 Maul. & Selw. 105; 2 Wils. R. 147; Barb. Cr. Tr. p. 77).

Nor is it necessary in the indictment to aver conclusions of law. It is sufficient to state the facts, and the Court will draw the inferences (2 Leach, 941; Barb. Cr. Tr. 277).

As a general rule in criminal cases, intention can be but a matter of presumption, arising either from the facts stated in the

indictment, or from extrinsic facts stated in evidence (Arch. Cr. Pl. 124). Now, applying this rule to the charge in this indictment, it cannot be doubted that an intent to kill is imputed. A musket loaded with powder and a leaden bullet is fired by the Defendant at the deceased ; she is shot through the body and killed. This is the charge. The common law rule of evidence to be applied to this case is, that the prisoner intends what he performs and effects, where the effect is the ordinary result of his act (2 Stark. Ev. 739 ; 3 Maul. & Selw. R. 15). In other words, the law infers that every man must contemplate the necessary consequences of his own acts (Arch. Cr. Pl. 124; Rex *v.* Dixon, 3 Maul. & Selw. 15).

It cannot be doubted that this indictment embraces the charge of a killing in express malice, or from a premeditated design to effect the death of deceased. But it is said that the charge in this indictment also embraces a lower grade of offence, to wit, implied malice, and may apply to that, and, consequently, a general verdict of guilty does not necessarily convict the prisoner of the higher offence of killing from a premeditated design to effect the death.

The answer to this is, that a general verdict of guilty has always been held to convict the prisoner of the highest offence charged in the indictment; and although lower offences were charged in the indictment, yet the Court, on a general verdict of guilty, might lawfully sentence the prisoner for the highest offence implied. This rule was expressly sanctioned by this Court where I applied the rule in the Oyer and Terminer, in the case of The People *v.* Conkey et al., and sentenced the prisoners for the highest offence charged. In that case there was a general verdict of guilty.

There is little propriety, however, in discussing this case upon general principles, as the whole question was decided in the case of The People *v.* Enoch (13 W. R. 159). That case decides what was familiar and well known to every criminal lawyer before, that the third subdivision of § 5, 2 R. S. 657, was but a re-enactment of the common law definition of murder, so far as

it went; and a careful comparison of the language employed in the statute shows that the framers thereof intended to put the common law language into the statute, which they have most fastidiously done.

They did strike down a class of homicides that at common law was held to be constructive murder, where there was no intent to kill, and threw them into a lower grade of manslaughter; yet so far as they retained the crime of murder, it was but a re-enactment of the common law upon the subject. The opinion of Judge Nelson in the Supreme Court, in the case of The People *v.* Enoch, above referred to, and also the opinion of the Chancellor in the Court of Errors in the same case, is very clear and satisfactory upon this subject, and is unanswerable to show that a common law form of indictment, like the one in the present case, is good under the statute, and would justify the imposition of the death penalty upon a general verdict of guilty under it.

It only remains to see whether the statute definition of murder in the first degree, as embraced in our present statute, has changed this rule. This statute was passed April 12, 1862, and is a literal copy of the 5th sect., 2 R. S. 657, while the statute definition of murder in the R. S. is only changed in the 3d sub. They have limited the cases embraced therein to a homicide committed while engaged in the commission of the crime of arson in the first degree, whereas before it embraced all unjustifiable homicides committed while engaged in *the commission of a felony.*

There is no pretence, and can be none, that this 3d sub. has anything to do with the case under consideration. It follows, therefore, that the case of The People *v.* Enoch is a controlling authority under our present statute. But it may be said that this act of April 12th, 1862, creates a new offence of murder in the second degree. Be it so. Murder in the second degree, as defined in that act, does not embrace any case that was not murder under the Revised Statutes. This, it seems to me, is very clear. This act of 1862 does not propose in any manner to interfere with manslaughter in any respect, as the same is defined in
19

the Revised Statutes. It only interferes with the crime of murder as defined in those statutes, by striking out of the third subdivision of the section every unjustifiable homicide perpetrated without a design to effect death, by a person engaged in the commission of a felony, other than arson in the first degree.

The result of the amendment of 1862 is to leave the first and second subdivisions of this 5th section embraced in the Revised Statutes, murder in the first degree; and when the homicide occurs without a premeditated design to effect death, by a person engaged in the commission of arson in the first degree, such killing is murder in the first degree.

Now, it must be borne in mind that our Revised Statutes, in their provisions as to murder and manslaughter, in the four degrees specified in the statute, embraced every conceivable case of unjustifiable homicide. As this act of 1862 leaves every degree of manslaughter, as defined in the Revised Statutes, wholly unmolested, it would seem to follow that murder in the first and second degrees, as embraced in this act of 1862, can only embrace those cases that were murder under the Revised Statutes. As this act of April 12, 1862, is explicit in its definition of murder in the first degree, and makes it embrace all the cases included in the first and second subdivisions of the 5th sec., 2 R. S. 657, and one class embraced in the third sub., to wit, when the killing occurs when engaged in the commission of arson in the first degree, it would seem to follow that the framers of this statute must have intended that all that class of cases thrown out of this third sub. of murder, as embraced in the R. S., should fall into the definition of murder of the second degree. This must be the construction of this act of April 12, 1862, otherwise there is no such thing as murder in the second degree, for no case is left for the statute to operate upon. If murder in the second degree does not embrace this class, there is no such thing as murder in the second degree under this statute.

It does not embrace murder in the first degree, for that is expressly excluded. It does not embrace manslaughter in any of

its degrees, as embraced in the Revised Statutes, for they are expressly excluded. It does not embrace a homicide perpetrated without a design to effect death, by a person engaged in the commission of the crime of arson in the first degree, for that is included in the crime of murder in the first degree. What class of cases does murder in the second degree embrace? There is nothing left for this statute to operate upon, except that class of cases carved out of the third subdivision of murder as defined in the Revised Statutes, and which are excluded from the crime of murder in the first degree. In other words, every killing perpetrated without a design to effect death, by a person engaged in the commission of a felony, other than arson in the first degree, is murder in the second degree, else there is no such thing as murder in the second degree, and the enactment of 1862, in this respect, prescribing the punishment for murder in the second degree, and purporting to provide for such an offence, is wholly inoperative. Applying, then, the familiar rule of construction, that every statute should be so constructed, if it may be, as to give it some effect, I think we must hold that murder in the second degree embraces the class of cases above indicated, to wit, that class of cases excluded from the third subdivison of murder, as embraced in the Revised Statutes.

The language of this 5th section of the act of April 12, 1862, so far as it attempts to make a definition of murder in the second degree, is extremely ambiguous; but it is susceptible of being read to the effect above indicated, and I am of the opinion that such was the intent of the framers of this statute.

If I am right in the views above expressed, it follows that the conviction and judgment were right, and should be affirmed.

BACON, J. (dissenting).—This is a writ of error, directed to the Supreme Court in the Second Judicial District, bringing up the record of an indictment, conviction, and sentence of the Plaintiff in Error, and which had been removed into that Court by writ of error to the Court of Oyer and Terminer, in and for the county of Westchester.

The Plaintiff in Error, Fitzgerrold, was indicted in the West-chester Oyer and Terminer, for the alleged crime of murder.

The substantive allegation in the indictment, on which the question was presented below, and in this Court arises, is, that " Thomas Fitzgerrold, feloniously, wilfully, and of his malice afore-thought, did kill and murder Ellen Hicks, by shooting her through the body with a leaden bullet, discharged from a musket," &c.

· Upon this indictment he was brought to trial before the West-chester Oyer and Terminer, in December, 1866, and the record states that the jury, in returning their verdict, " say that they find the said Thomas Fitzgerrold guilty." Upon this conviction he was sentenced to be hung the ensuing January.

The Supreme Court in the Second District affirmed the judg-ment, ordered the sentence to be carried into execution, and a writ of error having been brought to this Court, with a stay of execution, the case comes here for final adjudication.

The point made by the counsel for the Plaintiff in Error is, that the indictment only charges murder in the second degree, and the jury having returned a general verdict of guilty, the Court of Oyer and Terminer had power only to pronounce a sentence authorized by law in the case of a conviction for murder in the second degree, and that the sentence actually pronounced was unauthorized and void. The question is one of much interest and importance, and has never been presented for adjudication since the change made by the statute of 1862, defining murder in a somewhat different manner from that contained in the Revised Statutes, and creating two classes or degrees of that crime. At common law there were no degrees of murder, and the short and comprehensive definition of the crime was, " when a person of sound memory and discrimination unlawfully killeth any reason-able creature in being, and under the King's peace, with malice aforethought, express or implied " (3 Coke's Jus. 47).

The essential ingredient of the crime was malice aforethought, or prepense, as the old books called it, but this might be implied from circumstances, which necessarily proved its existence.

The Revised Statutes undertook to give a more precise as well

as a fuller definition of the crime, but they did not in reality enlarge the scope of the definition, nor include in it anything which had not been embraced by the common law within the general category of murder.

The Revised Statutes defined the killing of a human being (unless it be manslaughter, or excusable or justifiable homicide) to be murder in the following cases:

"1. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being;

"2. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual;

"3. When perpetrated without any design to effect death, by a person engaged in the commission of any felony."

This was the entire definition, and although distinguished by different characteristics, and attendant circumstances, the definition embraced but one offence, not separated into, nor discriminated by grades or degrees of crime.

After the Revised Statutes went into operation, the case of The People *v.* Enoch arose, and was decided in the Supreme Court, and ultimately in the Court of Errors (13 Wend. 159). He was indicted for murder, and the averment was, that the offence was committed "feloniously, unlawfully, and of malice aforethought," using substantially the old common law form, and not adopting the words of the statutes. Enoch was convicted of murder, and sentenced to be executed.

The Supreme Court held that the indictment was good, and sustained the judgment, and the Court of Errors approved the decision, holding, among other things, that the principal object of the statute was to restore the common law of murder, as it anciently existed, by discriminating between a felonious killing with malice aforethought, and a felonious killing without such malice, and thus to restrict certain cases to the grade of manslaughter, which theretofore were held to be murder.

If there had been no change in the statute, I am inclined to

the opinion that this decision (although, as I think, erroneous in principle, and hardly to be reconciled with some recent holdings of this Court) would control this case, and uphold the judgment. But in 1862 the Legislature saw fit to modify the provisions of the Revised Statutes, in relation to the crime of murder, and, among other things, to create two grades of the offence, to wit, murder in the first, and in the second degree.

In defining murder in the first degree, they changed the definition of the Revised Statutes of murder by dropping the third subdivision of section 5, and substituting in place of it the words, "when perpetrated in committing the crime of arson in the first degree;" and then added to the section a clause that "such killing, unless it be murder in the first degree, or manslaughter, or excusable or justifiable homicide, or when perpetrated without any design to effect death by a person engaged in the commission of any felony, shall be murder in the second degree."

It will thus be seen that the transaction thus distinguished, and which had been embraced in the original section defining murder, was taken out of that section, and made the distinguishing mark of murder in the second degree; and whatever practical difficulty may arise, as it has not unfrequently arisen, in ascertaining what other taking of life may fall outside of the definition of other grades of homicide, and within this new class or degree, there is no difficulty in determining that a case which presents these features, to wit, a killing by one engaged in the commission of a felony, though without a predetermined intent to take life, is murder in the second degree.

While the crime of murder was a single offence, admitting of no degrees, the case of The People *v.* Enoch might be deemed a controlling authority; but the moment the Legislature changed the law of murder, by creating a higher and lower grade, it seems to me to have lost its applicability, if, indeed, it be not, in spirit, an authority against the ruling of the Supreme Court in the case now under consideration.

The Chancellor, in maintaining the doctrine that an indictment in the old common law form, charging the crime to have been

committed with malice aforethought, was sufficient under the Revised Statutes, says the object of the Legislature was not to create a new offence of murder, but to restore the ancient common law on that subject, as it existed when the common law form was originally adopted; and therefore holds that the indictment in that form was good for the crime of murder committed under any of the circumstances specified in those subdivisions defining the crime.

If this be so, then the indictment in the case was a perfectly just indictment for murder in the second degree, since the killing, which was murder under the circumstances described in the third subdivision of the 5th section of the Revised Statutes, is now removed from the category of murder in the first degree, and constitutes murder in the second degree.

The jury, therefore, having found a general verdict of guilty, under an indictment which may be held to charge the crime of murder in the second degree, the Court had no right to assume that he was guilty of murder in the first degree, and pass a sentence which only a conviction for such an offence would authorize.

The decision in the case of The People *v.* Enoch proceeded, in effect, as we have seen, upon the ground that the Revised Statutes, in respect to the crime of murder, had not altered the common law, and that the definition therein given was but the adoption or introduction into the statute of the common law description of the crime. It was consequently held, that the words "malice aforethought" were so nearly identical with the words "premeditated design," as to fall within them. But with all proper respect for that decision, which appears to have been the unanimous judgment of the Court of Errors, affirming the judgment of the Supreme Court, it seems to me that both Courts overlooked and ignored the most important qualification of the words "premeditated design," contained in the words following it in the statute, to wit, that the design thus premeditated must be one "to effect the death of the person killed, or of any human being." The ruling purpose must be one to effect death, whereas

the words "malice aforethought" may be referred to a dominant and controlling purpose having another object, and the death effected occurs as an adventitious result of the original act to which the motive impelled. And this is obviously the case where death is caused by one engaged in the commission of a felony, without any original design to cause the death of any human being whatever.

This view is very clearly presented in the opinion of Johnson, J., in The People *v.* Clark (3 Seld. 385, 393), where he says that "malice prepense had attained a broader meaning than belongs to the term premeditated design. *The intent to take life was not necessary to constitute malice prepense.* Even express malice, or malice in fact, is defined to be a deliberate intention of doing any bodily harm to another, unauthorized by law, and by no means necessarily involved an intent to take life. The change, therefore," he adds, "which the statute has effected, by substituting the word 'design' in place of 'malice' * * * was to require—what the common law did not require—the existence of an actual intention to kill, to constitute that crime under the first subdivision of the 5th section;" and this view is said to be sustained "in those States where the crime of murder has been distinguished by statute into murder in the first and second degrees."

The logical sequence from these propositions would seem to be, that even under the Revised Statutes the proper mode of framing an indictment for murder would be, to follow the very words of the statute, and thus to indicate, by specific averments, under which one of those subdivisions of the 5th section defining the offence, the alleged crime was committed.

But, however that may have been, under the law as it now stands, creating degrees of the crime of murder, the obligation seems to me imperative, to pursue the mode thus indicated; and my opinion is, that an indictment for murder must show, by proper averments on its face, that it is for murder in the first degree, if that is the offence intended to be presented for trial; and that where the record shows nothing but an indictment, which is a good indictment for murder in the second degree, and the jury

responds by a simple verdict of guilty, the only sentence that it is competent for the Court to pronounce is the one prescribed by the statute for murder in the second degree. In the case of Dedieu v. The People (22 N. Y. 178), this Court enunciated the principle which, it seems to me, should govern this case. In the course of the opinion, Judge Denio, speaking of a statute specifying different degrees of crime, says : " An indictment for any of these offences must charge the Defendant, with certainty and precision, with having committed the acts under the circumstances and with the intent mentioned in the statute. If any of the ingredients contained in the statute definition are omitted, the indictment is fatally defective, and the defect is not cured by verdict. * * * The act which is charged as an offence must be described with such a degree of certainty as to distinguish it from other transactions, so that the party may not be indicted for one thing and tried for another." See also the opinion of Ingraham, J., in Fellinger v. The People (15 Abb. 128). This mode of charging alleged crime in an indictment seems to me not only just but elementary, and should be governed by the same rule that applies to a pleading in a civil action, by a party who claims a penalty, or seeks to enforce a remedy given him by statute, and who must bring his case precisely and specifically within the provisions of the statute, or his pleadings will be fatally defective.

It is no answer to say, that on the trial in this case all the proof necessary was given to show that the Defendant was guilty of the crime of murder in the first degree, and that we may assume that the Court instructed the jury properly as to the character of the prisoner's guilt, and therefore no injustice has been done.

This we cannot know, for this case comes before us without any evidence whatever, but simply upon the record showing under what indictment the trial took place, and what verdict was rendered—a verdict entirely consistent with an indictment and a trial for murder in the second degree; and if any other verdict had been rendered it would, in my judgment, have been erroneous.

If these views prevail, the judgment of the Supreme Court

must be reversed; and the question then arises, what disposition shall now be made of the case? We cannot send back the prisoner for a new trial, since, if there were no other difficulty, the constitutional immunity of the Plaintiff in Error, which forbids his being twice put in jeopardy of life for the same offence, would protect him from the perils of another trial.

But I see no objections to remitting the case to the Court below, for further action. Our reversal, in fact, touches nothing but the sentence.

Upon an indictment good for the offence of which I assume the prisoner was found guilty, a proper verdict has been rendered. Everything is right but the sentence; and as that will be greatly mitigated by the position in which the case now stands, the record should be remitted to the Supreme Court, with directions to cause the Plaintiff in Error to be brought before it, to receive the sentence which the statute authorizes the Court to pronounce, upon a conviction for the crime of murder in the second degree.