## Court of Appeals.

### *January,* 1883.

### PEOPLE *v.* MAJONE.

MURDER IN THE FIRST DEGREE.—PREMEDITATION.—INTENT.

Under the statute there must be a deliberate and premeditated design to kill, to constitute murder in the first degree, and such design must precede the killing by some appreciable space of time ; but the time need only be long enough to permit reflection and consideration, and the formation of a definite purpose to kill.
Whether this design was formed, must be determined from all the circumstances of the case.

Appeal by defendant, from decision of the general term, affirming judgment of the General Sessions of New York, convicting defendant of murder in the first degree.

*Theodore H. Swift,* for appellant.

*John McKeon,* district attorney (*John Vincent,* assistant), for the People, respondent.

EARL, J.—The carefully prepared and able opinion pronounced in this case at the general term, makes it unimportant that much should be written now.

The defendant was tried and convicted in the Court of General Sessions, in the city of New York, and hence, under chapter 330 of the Laws of 1858, this court " may order a new trial, if it shall be satisfied that the verdict against the prisoner

was against the weight of evidence, or against the law, or that justice requires a new trial." With this provision of law before us, we can see no reason for granting a new trial. The defendant was convicted of murder in the first degree, and that crime is defined by the statute to be the intentional killing of a human being without the authority of law, when such killing is "perpetrated from a deliberate and premeditated design to effect the death of the person killed, or of any human being." The main contention of the defendant's counsel in his argument before us was, that the evidence does not justify the finding that the killing in this case was deliberate and premeditated.

Under the statute, there must be, not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long; it must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill, and when the time is sufficient for this, it matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate and premeditated design to kill was formed, must be determined from all the circumstances of the case.

Here the most material facts, as we believe the evidence established them, are as follows : The defendant, an Italian street musician, about twenty-two years of age, in June, 1881, married a young Italian girl, just past thirteen years of age. After their marriage, they lived for a time with her parents, Mr. and Mrs. Selta; he did not at all times, as we may infer, live harmoniously with his wife, and had some difficulty with his mother-in-law, Mrs. Selta. On the morning of December 9, 1881, he left the house where he was residing, and called upon his friend, Rosa, and conversed with him about some money he owed him, and about a receipt he was keeping for him, and he, Rosa, returned with him to his house and entered the room where his wife and Mr. and Mrs. Selta then were. Rosa, Mr. Selta and the defendant were the only living witnesses to what then took place there, and the two former, whose evidence is more probable and credible than that of the defendant, agree in the following version of what happened

there.    As the defendant entered the room, his wife was hang-
ing clothes out of a window, and he asked her to go into a bed-
room and bring out a little box containing Rosa's receipt.    She
replied that she was hanging up the clothes and that he should
go and get the box for himself; he, replying, "will you or will
I go," took her by the arm and led her into the bed-room, say-
ing nothing.    Immediately after they entered the bed-room,
the two witnesses heard the report of a revolver, and he then
came out with the revolver in his hand, and putting it to the
head of Mrs. Selta, fired it.    He then started to leave the room
and pointed the revolver at Rosa, who attempted to intercept
him, and went down stairs and fired two shots into his own per-
son.    He killed both his wife and her mother.    There was no
altercation on the occasion of the shooting, and no provocation
then, except the refusal of his wife to comply with his request.
It does not appear that Mrs. Selta had any conversation what-
ever with him.    The pistol belonged to him, and had been for
some time in his possession.    His account of the affair differs
somewhat from that given by the other witnesses, and his evi-
dence tended to show that he was greatly provoked by what
his wife did and said then, and by what his mother-in-law then
did and had before said and done that morning.    But we have
no reason to doubt that the other witnesses gave a correct ac-
count of the affair, and their evidence leaves no doubt on our
minds that the killing was intentional, deliberate and premedi-
tated.

There was no error in the reception of the evidence as to
the conversation had by the defendant with Rosa, a few min-
utes before the killing; that was competent, although not very
important, as throwing light upon the state of his mind and his
subsequent conduct, and explaining the language used by him to
his wife.

We have thus noticed the only grounds of error alleged on
behalf of the defendant, and are of opinion that the judgment
should be affirmed.

All concur.