# Supreme Court—General Term—Third Department.

## *May,* 1886.

## PEOPLE *v.* BECKWITH.

### MURDER—DELIBERATION AND PREMEDITATION.

Upon the trial of an indictment for murder in the first degree, the defendant testified that the deceased forcibly entered defendant's dwelling house, struck him, pushed him against the wall, and seized him by the throat; that defendant, in self-defense, reached out for and "used" a butcher-knife on deceased, and got him down and choked him until he (defendant) was afraid he had killed deceased. On cross-examination, defendant testified that immediately after the above occurrences, he obtained an axe and struck deceased on the head with it, so that the blood flew up against the door, and it further appeared that said blow was the immediate cause of the death of deceased.

*Held,* (following People *v.* Majone, 1 *N. Y. Crim. Rep.* 94; People *v.* Conroy, 2 *Id.* 565, and People *v.* Leighton, 88 *N. Y.* 117), that a verdi t of murder in the first degree should be upheld; that laying aside other facts and circumstances in the case bearing on the subject, tue defendant's last act, the procuring of the axe and its use upon his prostrate and helpless victim, with the certain result of immediate death, discloses the existence of thought and consideration, and, in law, a deliberate and premeditated design to accomplish what of necessity must and did actually follow; *further held,* that the jury were not bound to accept defendant's exculpatory statements as absolutely true.

APPEAL from a judgment of the Court of Oyer and Terminer of Columbia county, convicting defendant, Oscar F. Beckwith, of the crime of murder in the first degree.

The facts appear in the opinion.

BOCKES, J.—The defendant was convicted in the Columbia county Oyer and Terminer, November, 1885, of murder in the first degree, for the killing of Simon A. Vandercook, and sentence of death was pronounced upon him therefor. At the close of the trial, and before judgment was pronounced, the defendant's counsel moved for a new trial upon the minutes of the court, and upon the exceptions in the case, which motion was denied. The case is now before the court on appeal from the

conviction and judgment, and a new trial is asked for princi-
pally on the ground that the verdict of guilty of murder in the
first degree rendered by the jury was, and is, against the weight
of evidence. A few exceptions taken in the course of the trial
are also urged as grounds therefor.

The homicide was committed on the 10th of January, 1882,
at a small cottage occupied by the defendant, at a place some-
what secluded and unfrequented; and it may be stated in the
outset of this examination of the case, that it stands fully estab-
lished on the record that the defendant killed Vandercook at
the time and place charged in the indictment. Indeed, the
defendant so testified in giving evidence in his own behalf.

The question for the jury on the evidence was, whether the
act was justifiable in self-defense, as was claimed by the defend-
ant, or murder in the first or second degree, or manslaughter.

The general facts of the case were as follows: The deceased
approached and entered the defendant's cabin, where, in a
struggle with the latter, or otherwise, he was stabbed by him
with a knife, which wound, either of itself, or with other injuries
inflicted upon him by the defendant with an axe, caused his
death. . The defendant at once proceeded to mutilate the body
in a revolting and inhuman manner, actually destroying some
portions of it by burning. He immediately, and before the
homicide was known, fled, and remained absent for three years,
when he was discovered in Canada, bearing a fictitious name,
and from whence he was brought back to answer the charge
laid against him in the indictment. Articles identified as hav-
ing belonged to the deceased were found in his possession.

It was also proved that he entertained unfriendly feelings
toward the latter, with whom he had unsatisfactory business rela-
tions; and it was also proved that he had expressed a desire
that some one would put the deceased out of the way, and that
it would be to the pecuniary advantage of one so to do.

The physician who examined Vandercook's remains, testified
that the wound inflicted with the knife was, in his opinion,
inflicted before death occurred, inducing a possible inference
that the immediate cause of death was because of the injuries
inflicted with the axe. He also testified that such wound

would not necessarily cause immediate death, although if not given attention, it would eventually prove fatal.  As bearing upon the question whether there was a struggle between the parties, as was asserted by the defendant, the physician stated that the wound with the knife was apparently by one coming up behind, although it might have been inflicted by one in front reaching over.

The defendant gave exculpatory evidence in his own behalf, to the effect, as claimed by him, that he acted simply and solely in self-defense.  It should be here observed that while it was his right to speak, he did so under the strongest conceivable inducements to make his admitted act other than criminal, and the jury were not bound to accept his exculpatory statements as unquestionably true.  To what extent his exculpatory testimony was to be credited, and how much weight should be given it, were subjects entirely for the jury to determine, and it was to be sharply scrutinized and compared and contrasted with other facts proved; and unless found satisfactory, when thus examined, the jury were at liberty to disregard it in whole or in part as unreliable and valueless.

He testified that Vandercook came into his cabin unbidden and against his will by actually breaking the door fastenings; that an altercation immediately ensued, accompanied by a blow from the deceased, followed at once by a scuffle and struggle between them; that Vandercook seized a stick of wood and then there was a further struggle for its possession; that Vandercook was getting the advantage, pushed him against the wall and seized him by the throat, whereupon he (defendant) reached out, took a butcher knife from a shelf, passed it to his other hand and "used it;" that this caused Vandercook to stagger a little; he added: "We then had a kind of scuffle, and I was a little the best for him about that time; got him down and choked him a while; .... I guess he did not get up very far; I don't think he did; I don't think he ever did get up very far; I hung on to him and choked him some time; I finally found that he was about past recall; I let him go; I was afraid I had killed him."

Vol. IV.—43.

On his cross-examination he was in some respects more explicit, and added a fact of serious import, which immediately followed the circumstances above related ·

"Q. Is it not true that Mr. Vandercook started for the door and you struck him on the head with an axe?

"A. No, sir; not then.

"Q. When was it?

"A. When he fell I jammed him over near the door, perhaps two feet; I don't know how far from the door; about that time I used the axe.

"Q. Where did you use it on him?

"A. On his skull; blood flew up against the door. . . . .

"Q. Was not he in such condition after the stab with the knife that you could have handled him without this blow from the axe?

"A. I don't know whether it was so or not.

"Q. Did not stop to find out?

"A. No, sir.

"Q. You could have handled him without crushing in his skull with an axe after that blow with a knife?

"A. I don't know.

"Q. You did not care?

"A. I did not care much about it one way or the other; I considered I had a right."

Now, as above suggested, it was for the jury to determine to what extent they would give credit to the defendant's testimony. This was a subject for the jury. But in point of fact, did the defendant's testimony aid his case? The principal and controlling question to be considered under the proof was probably one simply as to the grade of the crime shown to have been committed, for it can hardly be claimed in fairness from the defendant's own testimony that he was absolutely justified in taking Vandercook's life by the use of the axe. That the blow with the axe was the immediate cause of his death is quite manifest. Just how that wound would have appeared had not the head been severed from the trunk and burned up could not be determined. But this became of little importance inasmuch as from the defendant's statement, *that blow* with the axe pro-

duced immediate death. The wound from the knife might or not have proved ultimately fatal.

Now, it cannot, as we think, be well disputed that it here became a question for the jury on the proof to say: *First*, whether a crime had been committed by the defendant, and if that question was answered in the affirmative, as it seems almost inevitable that it should be, then; *secondly*, to determine the grade of the crime — whether it was murder in the first degree, or murder in the second degree, or manslaughter. The case was open to examination most assuredly on the facts and the law upon all these propositions; especially was this so upon the three last mentioned, and undoubtedly, as we think, a case was made on the proof for the consideration of the jury on the question whether the killing of Vandercook was " committed from a deliberate and premeditated design " on the part of the defendant to effect his death. The jury found this question against the defendant, as they were well authorized to do on the proof.

On this subject there was proof of hostile feeling on the part of the defendant towards the deceased as some inducement to the act. An expressed desire by the former that the latter should be put out of the way—a thought, as it seems, somewhat dwelt upon by the defendant; the probable rifling of the pockets of the deceased at the time of the homicide; and judging from the revolting and inhuman manner in which the dead body of the deceased was mutilated and partially destroyed, the defendant possessed such instincts as rendered him capable of contemplating and carrying out almost any conceivable enormity against his kind.

But his conduct on the occasion of the homicide, as detailed by himself, furnishes probably the strongest evidence of a settled premeditated design to there end Vandercook's life. After the latter was weakened and in some measure incapacitated by the blow with the knife, he was completely in the defendant's power. There was then no occasion for severe action for his own protection. Is it not pretty certain that he then considered the subject of killing Vandercook, thought and determined upon it, and carried out a then settled purpose?

The jury may well have found this question in the affirmative on a fair and reasonable construction of the defendant's own testimony. The doctrine of the law applicable in this case is laid down in People v. Majone (1 *N. Y. Crim.* 94; 91 *N. Y.* 211). It is there said that under our statute, defining murder in the first degree, there must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill; that such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill, and when the time is sufficient for this, it matters not how brief it is.

So, in People v. Leighton (88 *N. Y.* 117), it is said, that if the killing is not the instant effect of impulse; if there is hesitation or doubt to overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder.

The doctrine of the law thus laid down in these cases, received approval in the later case of People v. Conroy (2 *N. Y. Crim.* 565; 97 *N. Y.* 62–76).

We must, therefore, conclude in this case, that there was much evidence for the consideration of the jury, tending to show a deliberate and premeditated design on the part of the defendant to effect the death of Vandercook, testing the subject by the rule of law laid down in the cases above cited. Indeed, laying aside other facts and circumstances in the case bearing on the subject, his last act, the procuring of the axe and its use upon his prostrate and helpless victim with the certain result of immediate death, discloses the existence of thought and consideration, and in law a deliberate, premeditated design to accomplish what, of necessity, must and did actually follow.

We cannot say, after a careful examination of all the proof submitted, that the verdict of the jury is unsupported by or against the weight of evidence. On the contrary, we must declare our conviction that it is well supported by the proof. The

exceptions brought before us in the case are, as we conclude, without force.

The refusal to set aside the juror, New, was not error. Let the facts be conceded as stated to the learned judge, and we concur in his conclusion that there was no such intimate relation shown to exist between the juror and the district attorney as should exclude the former from the panel. He was not the servant of that officer in any respect. In declining to set aside the juror there was, we think, no abuse of discretion.

Some exceptions were taken to the charge of the judge, but none, as we think, requiring particular comment. We find in them no ground of error.

We should add, in conclusion, that the case seems to have been conducted throughout the entire trial with great liberality as regards the rights of the defendant. Particularly is this so in the favorable light in which the case was given over to the jury, under the clear and elaborate charge of the learned judge. So, too, it seems that the defendant was there, as he has been here on the appeal, well represented. His rights have been carefully guarded and protected, not only by an observance of all the forms of law, but also by ingenious and well-put argument. But, as we conclude, the law can only be vindicated by an affirmance of the conviction and judgment.

LANDON and PARKER, JJ., concur.