## COURT OF APPEALS.

### May 2, 1922.

## THE PEOPLE v. LUIGI GUADAGNINO.

### (233 N. Y. 344.)

(1) MURDER—APPEAL—WHEN COURT OF APPEALS MAY ORDER NEW TRIAL.
In a case of murder in the first degree the Court of Appeals may order a new trial if it be satisfied that the verdict is against the weight of evidence or that justice requires a new trial. (Code Crim. Pro., § 528; *People* v. *Becker*, 210 N. Y. 274.) It is not sufficient that there be some evidence from which the jury could have found a verdict against the defendant.

(2) SAME—WHEN EVIDENCE OF PREMEDITATION AND DELIBERATION NOT SUFFICIENT TO SUSTAIN VERDICT OF CONVICTION.
Since deliberation as well as premeditation have been made a part of the law of murder in the first degree, it cannot be that such deliberation and premeditation may be formed ''at the instant of the striking of the

fatal blow." There must be some appreciable space of time for such deliberation, or circumstances showing such deliberation preceding the act.

(3) SAME—ERRONEOUS CHARGE.

Defendant was walking back and forth in a street late in the evening with some companions. A person, who saw them and thought they were acting as if they were attempting to enter a store, telephoned the police who came up in an automobile and arrested defendant's companions. Neither the defendant nor his companions had committed a felony nor were they in the commission of a crime at the time of the arrest. When defendant heard the police car coming up he ran to another part of the street. An officer followed him, calling out, "Stop or I will shoot." Defendant jumped behind a tree and drawing a pistol, which he had a permit to carry, shot the officer as he came near, killing him instantly. Defendant says that he thought it was a hold-up and that he did not know that it was an officer who was pursuing him. No motive can be given or is furnished by the prosecution for the crime. No claim is made that defendant and his companions were attempting to burglarize the store or that they had committed a felony, and if any charge was made against defendant's companions it was subsequently dismissed. The trial court, after reviewing the evidence, charged, upon the question of deliberation, that "to constitute the crime of murder in the first degree there must not only be the intention to kill, but a deliberate and premeditated intention to kill, a previously decided intent and design to kill. Such design must precede the killing by some appreciable space of time, but the time need not be long. It must be sufficient for some reflection or consideration on the matter, for a choice to kill or not to kill and for the formation of a definite purpose to kill. When the time is sufficient for those it matters not how brief it is * * *. If there was sufficient deliberation to form a design to take human life and to put that design into execution by destroying a human life, there was sufficient deliberation to constitute murder, no matter whether the design was formed at the instant of striking the fatal blow or whether it was contemplated for months. It is enough if the intention precedes the act, although the act follows immediately." *Held,* error; that a design to kill formed at the instant of the killing where there is no deliberation or premeditation preceding the act is murder in the second degree, not murder in the first degree. (Penal Law, § 1046.) (*People* v. *Clark,* 7 N. Y. 394, disapproved; *People v. Koenig,* 180 N. Y. 155, distinguished.)

APPEAL from a judgment of the Supreme Court, rendered June 3, 1921, at a Trial Term for the county of Monroe upon

a verdict convicting the defendant of the crime of murder in the first degree.

*Arthur E. Sutherland* and *Charles E. Callahan,* for appellant.    The charge of the trial court that deliberation sufficient to constitute murder in the first degree might be found to exist, even if the design to take life was not formed until the instant of striking the fatal blow, was erroneous, and fatally prejudicial to the defendant.    (People v. Majone, 91 N. Y. 211; People v. Serimarco, 202 N. Y. 225; People v. Walworth, 4 N. Y. Cr. Rep. 355; Shufflin v. People, 62 N. Y. 229; People v. Mangano, 29 Hun, 259; Leighton v. People, 88 N. Y. 117; People v. Raffo, 180 N. Y. 434; People v. Koenig, 180 N. Y. 155.)    The essential elements of murder in the first degree, deliberation and premeditation, are wholly absent in this case and the conviction of the defendant is accordingly without support in the facts or in law.    (People v. Governale, 193 N. Y. 581; People v. Harris, 209 N. Y. 70; People v. Morse, 196 N. Y. 306; People v. Gilbert, 199 N. Y. 10; People v. Jackson, 196 N. Y. 357; People v. Ingraham, 232 N. Y. 245.)    The court below erred in denying the request of counsel for the defendant to charge the jury that there was no proof that a felony was committed or attempted prior to the homicide. (People v. Marendi, 213 N. Y. 600; People v. Morse, 196 N. Y. 306; People v. Nichols, 230 N. Y. 221.)

*William F. Love, District Attorney* (*Marsh N. Taylor,* of counsel), for respondent.    The charge of the trial court that deliberation sufficient to constitute murder in the first degree might be found to exist even if the design to take life was not formed until the instant of striking the fatal blow, was not erroneous or prejudicial to the defendant.    The charge upon the subject was a clear, complete statement of the law.    (People v. Conroy, 97 N. Y. 62; People v. Leighton, 88 N. Y. 117; People v. Majone, 91 N. Y. 211; People v. Koenig, 180 N. Y.

155; Perugi v. State, 104 Wis. 230, 593; Ernest v. State, 20 Fla. 383; Hogan v. State, 36 Wis. 226; Wharton on Homicide, 160-162; People v. Hawkins, 109 N. Y. 408; O'Brien v. People, 48 Barb. 274; People v. Ferraro, 161 N. Y. 365.) The essential elements of murder in the first degree, deliberation and premeditation, were amply proven and the conviction of the defendant is well supported by the evidence and the law. (Clifford v. State, 60 N. J. L. 287; Commonwealth v. York, 58 Mass. [9 Metc.] 93; People v. Conroy, 97 N. Y. 62; People v. Majone, 91 N. Y. 211; People v. Serimarco, 202 N. Y. 225; People v. Morse, 196 N. Y. 306; People v. Governale, 193 N. Y. 581; People v. Gilbert, 199 N. Y. 10; People v. Rodawald, 177 N. Y. 408; People v. Kiernan, 101 N. Y. 618.)

CRANE, J.:

At 2 o'clock in the morning of March 19, 1919, on Plymouth avenue near the corner of Tremont street in the city of Rochester, the defendant shot and killed James H. Upton, a police officer. He has been tried and convicted of murder in the first degree. The defendant at the time of the trial was thirty-five (35) years of age, married and had a family of five children. He lived at 186 Plymouth avenue not far from the scene of the homicide. At this place he conducted a shoe repairing shop, living over the store. He owned the building, having purchased it in the fall of 1918 for $6,350, paying $500 down and securing the balance by mortgage upon the property. His reputation in the neighborhood was apparently good, and he appears to have been an industrious man. On the evening preceding the homicide, he had been in the company of two countrymen of his, Salvatore Stagnito and Crispino Alaimo, with whom he had been eating and drinking. After leaving the restaurant next to the Hotel Regina, at about 11 o'clock, the three men went to the home of Guadagnino where he and Stagnito drank considerable wine. Alaimo did not drink. When his two friends started for home, the defendant volunteered to go with

them as far as the street car which they were to take.   They
proceeded up Plymouth avenue to Tremont street, on the corner
of which was the Versage grocery store.   Here they stopped
and conversed.   Alaimo became impatient when Guadagnino
suggested that they go back to his house and get another drink
as the next day was an Italian holiday.   Alaimo started to leave,
and crossed the street.   Witnesses for the People say that the
three men, possibly a fourth, walked down Tremont street a
ways and then came back in the direction of Plymouth avenue.
While these men were on the corner, a Mr. and Mrs. Richards,
who lived opposite, saw two men on the corner acting, as they
thought, suspiciously with all the appearance of attempting to
enter the door of the grocery store.   Mrs. Richards telephoned
to the police who, in a few moments, came up in an automobile,
and arrested Stagnito and Alaimo.   It is conceded by the
district attorney that these men had committed no felony, nor
were they in the commission of a felony at the time of the
arrest.   It was while these men were walking back through
Tremont street toward Plymouth avenue that the police car
came up.   The defendant hearing it, ran through an alleyway
in back of the Versage grocery store, then through a lot adjoin-
ing it on the north, and proceeded toward the westerly sidewalk
of Plymouth avenue.   He was spied by Officer Upton, who ran
after him.   The officer gained on him, calling out at the time,
" Stop or I will shoot."   The defendant proceeded up the ave-
nue, jumped behind a tree, as some of the witnesses say, and
shot the officer, who was within a short distance of him.   This
tree was in front of No. 197 Plymouth avenue, the second
building above the Versage grocery store.   The defendant says
that he thought it was a " holdup," that he did not know it was
an officer who was pursuing him.   He had on his person, so he
stated, $150.   He testified that he did not get behind a tree,
but turned suddenly and fired at his pursuer.   A permit to
carry a pistol had been issued to him.   Officer Upton died
almost instantly, having been shot through the heart.   The

defendant ran away, went to Buffalo, afterwards to Pittsburg, and was not arrested until nearly two years thereafter. In his statement made when arrested, as well as in his testimony upon the stand, he insisted that he did not know he was being pursued by an officer, that he had been drinking quite a bit, that he thought someone was going to rob him, and that he ran through the yard to go home. Upton he knew, as he had done work for him in repairing his shoes.

Except in minor details, there is no contradiction in the evidence regarding this occurrence. No motive whatever can be given or is furnished by the People for the crime. While a motive is not essential in cases of this kind, yet the fact that the district attorney can suggest no reason why the defendant should kill Upton bears materially upon the weight of the evidence claimed to show a premeditated and deliberate design to take life. As before stated, no claim is made that these men were attempting to burglarize the Versage grocery store or had been in the commission of a felony. Whatever charge was made against Stagnito and Alaimo was subsequently dismissed. The fact that these three men were standing upon the corner, two of them no doubt under the influence of liquor, and were walking about aimlessly, was enough to arrest the attention of the neighbors and to justify the summoning of the police. It is not at all improbable that the defendant, excited by liquor and having some money upon his person, became frightened and thought that he was being pursued in a "holdup." The officer called out "Stop or I will fire." If the defendant had committed no crime and was not intoxicated in the public streets, the law gave no occasion for his arrest. (Code Crim. Proc., § 177; Penal Law, § 1221; People ex rel. Kopp v. French, 102 N. Y. 583.) Under the charter of the city of Rochester (section 332), police officers were given the powers of peace officers and the duty of arresting any person violating a penal ordinance of the city. No ordinance was violated.

Nevertheless Upton was an officer and called out to Guadag-

nino to stop. The defendant should have stopped if he knew it was an officer of the law calling to him. The officer was dressed in uniform and the defendant, if not too excited, could have discovered this fact, had he been in a position or state of mind to see clearly.

In a case of murder in the first degree this court may order a new trial if it be satisfied that the verdict is against the weight of evidence or that justice requires a new trial. (Code Crim. Proc., § 528; People v. Becker, 210 N. Y. 274.) It is not sufficient, as in many other cases brought here for review, that there be some evidence from which the jury could have found a verdict against the defendant.

There is evidence from which it might be said Guadagnino had time to reflect and to form an intent to kill Upton. The drawing of the pistol, the distance run, the jumping behind a tree, the refusal to stop when called to by an officer in uniform —all these things could and might lead some to think that the defendant was guilty of premeditated murder. However this may be, we think that upon all the evidence and the circumstances of the case, it is very doubtful whether this defendant shot and killed Upton with any premeditated and deliberate design to effect his death. Guadagnino was upon the street with his companions and as stated was more or less under the influence of the wine which he had been drinking. He had with him a pistol for which he had a permit. An automobile suddenly drew up and he ran toward his home, only a few blocks away, pursued by a man who told him to stop or he would shoot. He had apparently done nothing for which he could be arrested. As this man gained upon him and came within about four feet of him, he turned, fired and ran away. Considering the position which the defendant held in the community, the fact that he was not attempting or committing any crime which would justify his arrest, that there was no reason for his killing Upton whom he knew, and all the other circumstances above detailed, it is very doubtful in our judgment

whether the defendant was guilty of any premeditation and deliberation which warranted his being convicted of murder in. the first degree.

Even if there be evidence from which the jury would be justified in finding premeditation and deliberation sufficient to make out the crime of murder in the first degree, it was of such a nature that it accentuates and emphasizes any errors which may have been committed upon the trial of the case. The court charged the jury as follows: " Now, gentlemen, to constitute the crime of murder in the first degree there must not only be the intention to kill, which I have spoken to you about, but a deliberate and premeditated intention to kill, a previously decided intent and design to kill. Such design must precede the killing by some appreciable space of time, but the time need not be long. It must be sufficient for some reflection or consideration on the matter, for a choice to kill or not to kill and for the formation of a definite purpose to kill. When the time is sufficient for those it matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure, and whether a deliberate and premeditated design to kill was formed must be determined from all the circumstances of the case. If there was sufficient deliberation to form a design to take human life and to put that design into execution by destroying a human life, there was sufficient deliberation to constitute murder, no matter whether the design was formed at the instant of striking the fatal blow or whether it was contemplated for months. It is enough if the intention precedes the act, although the act follows immediately. If there was hesitation or doubt to overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder."

This charge includes quotations from three cases (People v. Majone, 91 N. Y. 211; People v. Clark, 7 N. Y. 394, and Leighton v. People, 88 N. Y. 117). That part of the charge

which was taken from People v. Clark reads as follows: " If there be sufficient deliberation to form a design to take life, and to put that design into execution by destroying a life, there is sufficient deliberation to constitute murder, no matter whether the design be formed at the instant of striking the fatal blow or whether it be contemplated for months. It is enough if the intention precedes the act. although the act follows instantly." This is inconsistent with that portion of the charge taken from the Majone Case where Judge Earl said: " Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill." (P. 212.) A design to kill formed at the instant of the killing where there is no deliberation and premeditation preceding the act is murder in the second degree, not murder in the first degree. (Section 1046 of the Penal Law.)

The charge of the court was not clear and distinct upon this very crucial point in the case. If the courts are not clear and precise in the definition of the law, it cannot be supposed that the jury have drawn the distinctions which the law intends to make.

The Clark Case was decided before the amendment by chapter 644, Laws of 1873, adding the word " deliberate " to the statutes. We called attention in our decision in People v. Koenig (180 N. Y. 155) to the danger of using these words of the Clark opinion. On request the judge had charged the above quotation from that case. Cullen, Ch. J., writing, said: " This request is a literal extract from the opinion of Judge Johnson in People v. Clark (7 N. Y. 385, at 394). That case arose under the old law (2 R. S. 656, §§ 4, 5), and before the Legislature had made deliberation, as well as premeditation, a necessary ingredient of murder in the first degree. Nevertheless this very excerpt is quoted with approval by Ruger, Chief Judge, in People v. Conroy (97 N. Y. 62, at page 76), which

arose under our present statute. I think very probably it is also to be found in some other recent cases. Despite this approval, I am frank to say that I would be loath to uphold a charge where the proposition formulated by Judge Johnson constituted the only instruction to the jury on the subject of deliberation. It may be logically correct, but it may also be liable to mislead a jury. Probably the best definitions of murder in the first degree under our present law are to be found in the opinions in Leighton v. People (88 N. Y. 117) and People v. Majone (91 N. Y. 211)." Quoting from these two cases the judge continued: " I very much question whether these statements of the law can be substantially improved, and I think it would be far wiser for trial courts to adopt these definitions than to refer to cases which arose under different statutes. But the charge of the learned trial judge in this case must be taken as a whole and its correctness is not to be determined on isolated extracts." (Pp. 160, 161.) The opinion then goes on to show that the judge in further charging the jury made it very clear and specific that there must be some space of time within which premeditation and deliberation must occur preceding the act of killing.

Since deliberation as well as premeditation have been made a part of the law of murder in the first degree, it cannot be that such deliberation and premeditation may be formed " at the instant of the striking of the fatal blow." There must be some appreciable space of time for such deliberation, or circumstances showing such deliberation preceding the act. To state in one sentence that there must be such a space of time for deliberation and in the next sentence that there need not be, tends to confusion and in fact is meaningless. The Penal Law has made the distinction, and though it may be at times difficult of application, it at least is very simple for expression. Whatever difficulty there may be in analyzing facts to determine whether there be deliberation and premeditation, there can be no difficulty whatever in stating the law upon the subject. The Koenig

Case indicates quite plainly that the quotation taken from the Clark case should not be applied to our present law, and tends to the confusion and perplexity of jurors.

Guadagnino killed Officer Upton. About that there can be no question. Unless he acted in self-defense, he committed a crime. Whether that crime was murder in the first or second degree, or manslaughter in the first degree was the all-important question. Whether there was premeditation and deliberation as well as intent to kill had to be ascertained from meager circumstances. In view of all the facts about which there is little or no dispute premeditation and deliberation in my judgment were a very doubtful element in the case. If the jury were properly instructed the fact would stand out clearly that there is a marked distinction in the law between deliberate premeditation and an intent to kill. A premeditated design deliberated upon constitutes murder in the first degree for which a man forfeits his life. An intent to kill without such deliberate premeditated design is murder in the second degree for which life cannot be taken. The charge is, therefore, incorrect which confuses these things and says that premeditation and deliberation may be formed at the instant of the killing and makes no distinction between deliberate premeditation and intent to kill. If these matters have been perplexing to the courts how much more important is it to see that they are not perplexing to juries which have to apply the law to the facts.

The learned trial judge frequently referred in his charge to premeditation and deliberation and quoted from other cases which correctly defined the law. We cannot, however, in a case like this disregard and overlook this point of error which might so far as we can say have been confusing to the jury. The matter was overlooked and disregarded by this court in People v. Koenig for reasons there stated. The facts in this case are different from the Koenig Case. The evidence as to premeditation and deliberation here is so very weak and unsatisfactory

that we are not warranted in my judgment in brushing this error aside.

At the close of the case, the court was requested to charge as follows: " Mr. Callahan: I ask the court to charge the jury that there is no proof in this case that a felony was committed or attempted prior to the homicide. The Court: That has nothing to do with this case. Whether or not this man was engaged in the commission of a felony has nothing to do with his guilt on this trial, under this indictment. He is not charged with having committed this killing while committing a felony."

As before said, no felony was committed or attempted by the defendant or his companions, and the fact is frankly conceded by the district attorney. The court might well have so stated. The natural impression to be gathered from what was said would be that the defendant might have been engaged in the commission of a felony, but if he were, the jury should disregard it. While this is not vital and under ordinary circumstances would not be sufficient to warrant a reversal of a judgment of conviction, yet taken in connection with all the other things that have been said regarding this case, we think it may have had some weight or some influence with the jury.

For the reasons here stated, this judgment of conviction should be reversed and a new trial granted.

POUND, J. (concurring). The evidence from which a jury might find deliberation and premeditation was ample. Considering defendant's testimony and theory of the case alone, the instructions given by the court on that point were in part misleading and prejudicial, obliterating the line between murder in the first degree and murder in the second degree.

I concur in the result.

HOGAN, McLAUGHLIN and ANDREWS, JJ., concur with CRANE, J.; HISCOCK, Ch. J., concurs in result; POUND, J., concurs in result in memorandum, in which CARDOZO, J., concurs.

Judgment of conviction reversed, etc.